BOURKE v. CHECKER CAB MANFG. CORPORATION.

1. SALES—RESCISSION—FRAUD—EVIDENCE—SUFFICIENCY.
   In a suit for the rescission of a contract for the purchase of certain taxicabs, on the ground that defendants fraudulently induced plaintiff to purchase them and go into the taxicab business, in which he was inexperienced, evidence *held*, insufficient to show that the business was not profitable.

2. SAME—INEXPERIENCE No GROUND FOR RESCISSION WHERE RECOGNIZED BY ALL PARTIES.
   The fact that plaintiff was inexperienced in the operating end of the taxicab business, as compared with defendants, *held*, of no importance, on the record, which shows that this fact was recognized by all parties and accounts for

[1]Sales, 35 Cyc. p. 157; [2]Id., 35 Cyc. p. 130.

their agreeing that a competent business manager be employed.

3. SAME—ALLEGED KNOWLEDGE THAT COMPETITION WOULD FOLLOW
NOT ESTABLISHED BY RECORD.
     The contention that defendants knew or should have known
     that keen competition in the taxicab business would
     follow plaintiff's engaging in the business in the city
     selected, as it did, by the coming of another taxicab company,
     *held*, not established by the record, which shows
     that they did not know and then had no good reason to
     believe that such competition would follow.

4. SAME—EXPRESSION OF OPINION NOT FRAUD—MISREPRESENTATION
NOT SHOWN.
     The representation by defendants that the city selected
     offered an opportunity to do a profitable taxicab business,
     *held*, at most, the mere expression of an opinion actually
     entertained, and would not amount to fraud even if it
     were a misrepresentation, which the record fails to show.

5. SAME—FRAUD NOT ESTABLISHED.
     Evidence *held*, insufficient to establish fraud, and therefore
     plaintiff is not entitled to rescind.

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted April 6, 1927.     (Docket No. 24.)     Decided June 6, 1927.

Bill by John H. Bourke against the Checker Cab
Manufacturing Corporation and another for the rescission
of a contract on the ground of fraud.     From a
decree for plaintiff, defendants appeal.     Reversed, and
bill dismissed.

*Henry M. Kimball* and *Harry C. Howard*, for plaintiff.

*Adams & Van Horn* (*Mason & Sharpe*, of counsel),
for defendants.

CLARK, J.     The bill was filed to rescind a contract
of purchase of five taxicabs and to recover the

<hr>

³Fraud, 27 C. J. § 204; Sales, 35 Cyc. p. 157; ⁴Fraud, 26 C.
J. § 52; 27 C. J. § 203; ⁵Id., 27 C. J. § 201; Sales, 35 Cyc. pp.
84, 157.

portion of the purchase price paid and other moneys paid and expended because of and in pursuance of the contract.    Plaintiff alleges that he was fraudulently induced to buy by defendant Kronenberger acting as salesman of the other defendant, Checker Cab Manufacturing Corporation.

At the time of making the contract, about May 23, 1923, the parties resided in Chicago.    Plaintiff was 50 years old.    He had been employed by the Yellow Cab Manufacturing Company as "mechanical superintendent for them, machine shop, tools, making parts for taxicabs."    He had operated and managed a delicatessen store in Chicago.    He was without experience in owning or driving taxicabs.    Kronenberger was 30 years old, knew and was experienced in the taxicab business.    Plaintiff, who knew Kronenberger, went to his office intending to buy two taxicabs and to operate them in Chicago.    Kronenberger advised against it, and testified:

"I told him that I thought the possibility of a small undertaking in Chicago was not quite as attractive, based on my observations, as propositions in a smaller town for a small fleet, one being more in proportion to the size of the other, while a small fleet in Chicago was practically lost.

"I told him of our having definite plans to move to Kalamazoo, and that I had been to Kalamazoo and observed while there that there was only one cab company there.    I said, 'You could go over there and look at the cab business as it exists there, and you can go to some other smaller cities, Elgin or Aurora, or places near Chicago, if that suits you better.    If you go to Kalamazoo you may bear in mind that our being located there with a pretty big business—kind of looks like we are going to be a big business—will possibly help you,—similarity of name; and we will employ a certain number of people and if we conduct our business right over a period of time, why, together we ought to make the name "Checker Cab" stand pretty solid in Kalamazoo—you in the business of operating cabs and we making them.'    He liked the idea of investigat-

ing Kalamazoo, and following my suggestion did come here and told me he would."

Plaintiff, following his first visit to Kalamazoo, was not favorably impressed. He feared the competition of the local taxicab organization then in business in that city as "too strong" and "strongly entrenched." It was recognized by plaintiff himself that to engage in the business he needed the aid of a man practical, capable, and experienced in business. One Birenbaum was agreed upon. That he met fully the requirements is established by the record. He and plaintiff again visited Kalamazoo and made a study of the field. Plaintiff decided to locate there, and accordingly contracted to purchase the taxicabs, which came to Kalamazoo in due course, and plaintiff, aided by Birenbaum as an assistant manager, engaged in the business. No complaint is made of the taxicabs or of the price thereof. During the first two weeks the business was satisfactory and profitable. Then plaintiff discharged Birenbaum to take in a brother-in-law without experience in the business. Within a few days following plaintiff's locating in Kalamazoo, a competitor came to that city and operated a number of Red Top cabs. After considerable time plaintiff discharged the brother-in-law whom he had employed.

When plaintiff had conducted the business a few months he became ill and disappeared. Kronenberger directed that certain employees of the defendant company take charge of plaintiff's business during his absence, which they did and they managed the same profitably to plaintiff. Plaintiff returned after a time, and insisted that the business be restored to him, and it was restored. He had made payments from time to time to a finance company to whom the installment contract under which he had purchased the cars had been assigned. Payments due upon such contract being and remaining delinquent, the cars were

taken from plaintiff.   This suit followed.   Plaintiff
had decree.   Defendants have appealed.

A great number of alleged fraudulent representa-
tions are discussed by counsel.   Space forbids dis-
cussion of many of them.   It does not appear satis-
factorily that the business was not profitable.   Plain-
tiff, although often urged by Kronenberger to keep
books, failed to do it.   Such proof as there is of re-
ceipts and disbursements indicates a profitable busi-
ness.   What became of the receipts of the business
the record does not clearly disclose.

Much stress is laid on the fact that plaintiff, as
compared with Kronenberger, was inexperienced in
the operating end of the taxicab business.   That was
a fact known and recognized by all parties, including
plaintiff himself, and it accounts for the employing of
Birenbaum.   On this record no importance can be
attached to that fact.

Matter urged most earnestly as fraud is that Kronen-
berger knew or ought to have known that upon plain-
tiff's engaging in business in Kalamazoo with a number
of Checker Cabs, keen competition from the Yellow
Cab Manufacturing Company was likely to follow, as
it did by the coming of the Red Top Cabs.   This
argument is based on the showing in the record of
such competition in Cleveland and Chicago at least.
But this record fails to sustain the argument.

There is positive and uncontradicted evidence that
Kronenberger did not know and then had no good
reason to believe that such competition would follow
plaintiff's taking his five cabs to Kalamazoo.   De-
fendants were not insurers of plaintiff's venture.
Plaintiff knew that a taxicab company was operating
in that city and that his coming was likely to cause
greater activity for business on its part.   And com-
petition is generally a hazard of business.   It is urged
that it was represented to plaintiff that Kalamazoo

offered an opportunity to do a profitable business. At most, that was a mere expression of an opinion actually entertained. And, in any event, we think it was not a misrepresentation.

We have considered all the alleged misrepresentations and the evidence urged in support thereof and find that plaintiff has failed to establish fraud and that he is not entitled to rescind. This is without prejudice to plaintiff's right to have certain meters admittedly held by defendant corporation subject to his order.

Decree reversed and bill dismissed, with costs to defendants.

BIRD, SNOW, STEERE, FELLOWS, WIEST, and McDONALD, JJ., concurred. SHARPE, C. J., did not sit.